UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 22-092-DCR |
| ) | |
| V. ) | |
| ) | |
| CLAUDIO EVERARDO CABRERA, ) | **MEMORANDUM OPINION** |
| JR., ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

*** *** *** ***

A jury convicted Defendant Claudio Cabrera, Jr. of conspiring to commit money laundering (Count Four) and promotional money laundering (Count Eight). [Record No. 223] Based on a Total Offense Level 30 and Criminal History Category I at the time of sentencing, Cabrera faced an advisory guideline range of 97 to 121 months' imprisonment. [PSR ¶¶ 49, 50; Record No. 382, p. 47] He was sentenced on August 29, 2023, to a total of 110 months' incarceration.[1] [Record No. 359] Cabrera's sentence also includes a three-year term of supervised release. [*Id.*]

Through counsel, Cabrera has moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. [Record No. 462] Cabrera's motion will be denied for the reasons that follow.

---

[1] Cabrera was sentenced to 110 months' imprisonment on each of Counts Four and Eight to be served concurrently. [*See* Record No. 359]

- 1 -

## I. Background

Amendment 821 (Part B) to the United States Sentencing Guidelines provides for the possibility of a retroactive two-level reduction to the Base Offense Level for defendants who did not have any criminal history points at the time of sentencing and whose offenses of conviction did not involve certain aggravating factors. *See* U.S. Sent'g Comm'n, Guidelines Manual §4C1.1(a) (Nov. 2023). For Cabrera, a two-level reduction would result in a recalculated Total Offense Level of 28, and would produce an amended advisory guideline range of 78 to 97 months' imprisonment. *See* USSG Ch.5, Pt.A. But the Court's inquiry does not end there. Even if a defendant is eligible and a reduction is authorized under §1B1.10 of the Guidelines, the Court must still determine whether, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), a reduction is warranted. *See Dillon v. United States*, 560 U.S. 817, 826 (2010).

Having previously identified Cabrera as eligible under Amendment 821 (Part B), the Court initiated a review of his sentence *sua sponte*. Consistent with General Order 23-21, the United States Probation Office for the Eastern District of Kentucky prepared an analysis regarding the expected application of Amendment 821 to Cabrera's sentence. On January 4, 2024, the Court entered a Memorandum Order directing that a copy of the analysis be shared with Cabrera, that the United States file a response explaining its position with respect to a sentence reduction for Cabrera, and that Cabrera be afforded an opportunity to reply. [Record No. 402]

The United States filed a response, recommending that the Court preserve Cabrera's original sentence. It argued that the nature and circumstances of Cabrera's criminal conduct weigh against reducing his period of incarceration. [Record No. 408] In particular, the

government noted that Cabrera "acted as a courier of money derived from a large-scale drug distribution conspiracy," and emphasized that in a two-month period he "traveled [to] 10 states to launder money"—much of which was "derived from fentanyl sales." [*Id.*] Moreover, the government pointed out that despite Cabrera being stopped by law enforcement at the Blue Grass Airport in Lexington, Kentucky in February 2021 (at which time officers seized nearly $200,000 in currency concealed in his luggage), Cabrera continued laundering money until October 2022. [*Id.*; PSR ¶ 22]

The Court did not receive a reply from Cabrera by the filing deadline of January 26, 2024.[2] However, the Court proceeded to conduct an analysis of a potential sentence reduction based on all available information and entered Notice providing that "the Court does not intend to reduce [*sua sponte* Cabrera's] previously imposed period of incarceration." [Record No. 416] In resolving the present motion, the Court now considers Cabrera's Reply as well as any new arguments raised in the filing prepared by counsel.

## II. Discussion

Having already concluded that Cabrera is eligible under Amendment 821 (Part B), the question before the Court is whether a reduced sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a). *See* USSG §1B1.10, comment. (n.1(B)(i)). Some of the relevant factors for consideration include "the nature and circumstances of the offense"; the defendant's "history and characteristics"; the need for the

---

[2] Cabrera's Reply was received by the Court on February 29, 2024. [Record No. 430] In his Reply, Cabrera notes that the United States' Response was not delivered to him until January 30, 2024, by which time his reply deadline had already passed. While the Court was unable to consider it prior to issuing its Notice on January 30, 2024, the instant motion incorporates it by reference. [*See* Record No. 462, p. 2.]

sentence "to reflect the seriousness of the offense," "promote respect for the law," "just punishment for the offense," "afford adequate deterrence," and "protect the public." 18 U.S.C. § 3553(a)(1)–(2)(C). Weighing the § 3553(a) factors as part of a retroactive resentencing inquiry is "a matter of reasoned discretion, not math," *United States v. Rayyan*, 855 F.3d 436, 442 (6th Cir. 2018), and the Court does so with the same discretion it exercises at an initial sentencing proceeding, *Concepcion v. United States*, 597 U.S. 481, 490–92 (2022).

### A.  Contemplating Amendment 821 at Sentencing

At the time of Cabrera's sentencing hearing, the 2023 Amendments to the Federal Sentencing Guidelines had already been finalized and submitted to Congress.[3] As such, the Court was fully aware of Amendment 821 and was able to contemplate its potential impact on Cabrera at the time of his sentencing.[4] In doing so, the undersigned stated the following:

> This defendant does not have any criminal history points; he's in Criminal History Category I, and it could be argued that under changes that may be made to the Guidelines in November, that this defendant would be in a lower offense level calculation, lower guideline range, and he could perhaps argue . . . that the Court should consider a different guideline range in the case.

[Record No. 382, p. 57] But the undersigned rejected such a contention, noting that "the Court does not believe that it would affect the determinations to [Cabrera's] sentence" even if he were eligible for a retroactive sentence reduction. [*Id.*] The Court made clear that, in this

---

[3]   *See* Press Release, U.S. Sent'g Comm'n, "Back in Business" U.S. Sentencing Commission Acts to Make Communities Safer & Stronger (Apr. 5, 2023).

[4]   The Court did not explicitly reference, "Amendment 821." Instead, the Court referred more broadly to changes relating to §1B1.10 and/or Chapter Four of the Guidelines that may have retroactive effect. [*See* Record No. 382, p. 57.]

- 4 -

instance, Cabrera's criminal history was a poor reflection of his "extensive money laundering activities." [*Id.* at 58]; *see also infra* Section II.B.1–2.

Furthermore, the Court stressed the importance of imposing a sentence that reflects the seriousness of the offense and noted that a sentence below or even at the bottom of the then-applicable guideline range would unduly diminish the seriousness of Cabrera's conduct. [Record No. 382, p. 58] After concluding that a 110-month period of incarceration was appropriate, the Court once again made clear that Amendment 821 "would not alter [the Court's] analysis under the § 3553 factors." [*Id.* at 60]; *see* USSG §1B1.10, comment. (n.1(B)(i)).

Mindful of new information that may be conveyed through the instant motion, the Court will reassess the § 3553(a) factors unconstrained by any previous determinations.

### B. Section 3553(a) Factors

#### 1. Nature and Circumstances of the Offense

The undersigned continues to agree with the United States' earlier assessment that the nature and circumstances of Cabrera's criminal conduct weigh against reducing his remaining period of incarceration. [*See* Record No. 408] During the sentencing hearing, the undersigned made abundantly clear that the Court views Cabrera's conduct as being "very serious." [Record No. 382, p. 57] Cabrera traveled throughout the United States while acting as a professional courier laundering drug proceeds for an international drug distribution network. [PSR ¶ 9] Even after law enforcement seized $196,870 from him at the Bluegrass Airport, in Lexington, Kentucky, he continued to launder drug proceeds. [*Id.* ¶¶ 9, 22] In total, $376,870 in laundered money was attributable to Cabrera. [Record No. 382, p. 45] But the Court also

recognizes that this amount only reflects a small percentage of the money that Cabrera was ultimately responsible for laundering. [*Id.* at 56]

Although Cabrera may not have been directly involved in the distribution of deadly narcotics, his contribution to the larger drug distribution conspiracy cannot be ignored— "money laundering is an integral part of a drug enterprise." *United States v. Avery*, 128 F.3d 966, 973 (6th Cir. 1997). This conspiracy involved significant amounts of cocaine and fentanyl,[5] both of which pose a significant threat to public safety and have had a devastating effect on communities in this region and throughout the United States.[6] *See* Anne Milgram, Administrator, Drug Enf't Admin., Press Conference on *Operation Blues Brothers* (Nov. 20, 2023) ("Fentanyl is the greatest threat to Americans today. . . . And it is the leading cause of death for Americans between the ages of 18 and 45."). Neither Cabrera's Reply nor the instant motion attempt to mitigate considerations under this factor. As such, it continues to strongly weigh against reducing Cabrera's period of incarceration.

### 2. Cabrera's History and Characteristics

When considering Cabrera's history and characteristics, the Court's inquiry is not limited to reviewing his criminal history. *See United States v. Childress*, 874 F.3d 523, 528

---

[5] The apartment raid conducted by the Drug Enforcement Administration in Lexington, Kentucky on April 3, 2022, resulted in the seizure of more than 1.5 kilograms of cocaine and 7 kilograms of fentanyl. [PSR ¶ 13] "Fentanyl doses as small as two milligrams can be lethal," meaning that seven kilograms has the potential to produce 3.5 million lethal doses. *United States v. Moore*, No. 24-3017, 2024 WL 3294950, at *2 (6th Cir. 2024) (citing *United States v. Brown*, 538 F. Supp. 3d 154, 170 (D.D.C. 2021)).

[6] Between 2020 and 2023, fentanyl was found in 6,150 overdose deaths in the Commonwealth of Kentucky alone. *See* Ky. Off. of Drug Control Pol'y, *2020 Overdose Fatality Report* 3 (May 2021); Ky. Off. of Drug Control Pol'y, *2021 Overdose Fatality Report* 1 (May 2022); Ky. Off. of Drug Control Pol'y, *2022 Overdose Fatality Report* 1 (May 2023); Ky. Off. of Drug Control Pol'y, *2023 Overdose Fatality Report* 4 (May 2024).

(6th Cir. 2017).  In reviewing this factor, the Court also considers personal factors like the defendant's remorse and acceptance of responsibility, family support and ties to the community, as well as any other aggravating and/or mitigating considerations.  *See United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009).

Cabrera's lack of documented criminal history—though certainly not unfavorable—is a poor reflection of his propensity to engage in criminal misconduct.  For approximately a year and a half, Cabrera was actively working as a professional money launderer.  [Record No. 382, pp. 41, 56]  He participated in "frequent flights for the purpose of transporting known drug proceeds across state lines," [PSR ¶ 23; Record No. 369, p. 44], traveled separately from coconspirators—a detection avoidance tactic, [Record No. 379, p. 9], carried multiple cell phones and communicated with coconspirators in coded fashion, [Record No. 369, p. 28], and resumed his money laundering activities even after being caught and questioned by law enforcement, [Record Nos. 369, p. 44; 408, p. 5].  In other words, Cabrera's lack of a criminal record highlights his ability to successfully evade detection, not his lack of willingness to engage in criminality.

Cabrera describes his imprisonment as "a wake-up-call . . . in the type of life he has lived," and notes that he "realizes the gravity of his crime and how it directly affects the public," and is remorseful.  [Record No. 430, pp. 2–3]  But the record entirely undermines this assertion.  Cabrera had the opportunity to reflect on his conduct and change course after being caught at Bluegrass Airport on February 2, 2021.  [PSR ¶ 22]  Instead, he chose to continue money laundering in California.  [Record Nos. 369, p. 44; 408, p. 5]  And in doing so, he continued to support the distribution of deadly drugs throughout the country, showing a complete disregard for public safety and the rule of law.

- 7 -

In terms of demonstrating remorse, Cabrera acknowledged his responsibility for the first time in his Reply—while seeking a sentence reduction. [Record No. 430, p. 2] During allocution, he offered thanks to those who have helped him "in these difficult times," assured the Court that he is "not a bad person" and "truly [has] a good heart," and asked for "a second opportunity to make a positive impact in this world." [Record No. 382, p. 51] The Court continues to doubt the sincerity of Cabrera's words of change and remorse.

Cabrera does have ties to the community in California, where the majority of his family resides. [PSR ¶ 55] And some of those family members submitted letters of support. [Record No. 349] There are several indications that Cabrera has strong family support and even that he assumed a paternal role for his siblings. [*Id.*] Reading the letters, there is no doubt that Cabrera is loved and missed by his family. But as the undersigned noted at sentencing, letters may also serve as "an indication that the defendant has not fully acknowledged his responsibility to other family members." [Record No. 382, p. 54] And if an individual is unwilling to be forthright with family, it will be difficult for them to assist a defendant in avoiding criminal activity upon release. When letters include phrasing like, "I understand he made *allegedly* a mistake," the Court questions the extent to which family will be able to provide meaningful support and guidance. (Emphasis added.) [Record No. 349-4] The Court takes a neutral position with respect to these letters.

Lastly, the Court considers other factors that may help present a more developed picture of the defendant's history and characteristics. While Cabrera's lack of documented criminal history does not carry much weight, there are personal characteristics that are favorable. Cabrera is young, appears to be in good physical and mental health, has no history of substance abuse, and reports some experience working in customer service, landscaping, drywall, and

general construction. [PSR ¶¶ 59–63, 66–67] In addition, his conduct while incarcerated provides no indication of disciplinary trouble and suggests a drive to earn his GED and pursue programs that will prepare him for life after incarceration. [*See* Record No. 430] The undersigned is optimistic that these favorable qualities will lessen Cabrera's likelihood of recidivism once released. For the reasons noted above, the Recidivism Risk Assessment provided with Cabrera's Reply relies on somewhat misleading data and therefore provides little added support.

Once again Cabrera's Reply and the instant motion offer little else to reconsider under this factor. Reviewed in its totality, the Court continues to interpret this factor as cautioning against a sentence reduction. However, there are several positive elements that the undersigned encourages Cabrera to embrace while working towards his rehabilitation and reentry into the community.

### 3. Sentencing Goals

Lastly, the Court considers the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C). At sentencing, the Court concluded that a sentence of 110 months' incarceration was necessary to reflect the seriousness of Cabrera's misconduct, noting that a lesser sentence would unduly diminish the seriousness of his actions. [Record No. 382, p. 58] The undersigned also reasoned that the sentence imposed would serve the vital interests of promoting respect for the law and providing just punishment. [*Id.*] The fact that Cabrera continued to engage in money laundering after being caught by law enforcement reinforces the need to promote these goals. Cabrera's decision to

continue laundering money further highlights the need for the sentence imposed to provide sufficient deterrence both to Cabrera and others who would engage in similar misconduct. The Court's original sentence of 110 months' incarceration does just that.

Cabrera believes that the additional time he will be required to serve under his original sentence "will not provide [him] with more deterrence than he will already receive" from a reduced sentence. [Record No. 430] Even if this assertion is true, specific deterrence is only one consideration among many that the Court balanced when handing down Cabrera's original sentence. Cabrera's belief that a lesser sentence will carry equal deterrent impact does not negate the Court's need to focus on the bigger picture.

Cabrera also notes that by failing to reduce his sentence, it will cause a sentencing disparity when compared to other similarly situated defendants. [*Id.*] This claims is incorrect. Cabrera's codefendant, Ruvi Pacheco, was found guilty of the same offenses and was sentenced to the same period of incarceration. [*See* Record No. 343] But the true focus when assessing this factor calls for a nationwide assessment. And Cabrera's term of imprisonment falls squarely within the guideline range at the time of sentencing. A subsequent amendment to the Guidelines does not create a *de facto* disparity for all who do not receive a sentence reduction. It remains the Court's obligation to consider each case individually. As such, the Court does not agree that a sentencing disparity will exist if Cabrera's original sentence is maintained.

### C. In Totality

After reviewing all relevant information, it is clear to the undersigned that no reduction to Cabrera's sentence is warranted. Cabrera's sentence already reflects the shortest period of incarceration that would be sufficient to satisfy the purposes set forth in 18 U.S.C. § 3553(a),

while being no longer than necessary to achieve those purposes. The nature and circumstances surrounding the underlying offenses strongly caution against a reduction. And despite the existence of positive aspects to Cabrera's history and characteristics, they remain overshadowed by the aggravating factors discussed in this opinion. The defendant's service of the remainder of the sentence originally imposed is necessary to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence both to Cabrera and others.

### III. Discretionary v. Mandatory

Cabrera's motion articulates an apparent misunderstanding of the Sentencing Guidelines when it concludes, "the Defendant's adjusted offense level of 30 *must* be decreased by 2 levels." [Record No. 462] (emphasis added). The use of this mandatory language is repeated in the proposed order as well. However, when the Court contemplates a sentence reduction as a result of an amended guideline range, §1B1.10 is the controlling policy statement. When a motion is brought under 18 U.S.C. § 3582(c)(2), "the court *may* reduce the defendant's term of imprisonment." USSG §1B1.10(a)(1), p.s.

Proceedings brought under 18 U.S.C. § 3582(c)(2) "do not constitute a full resentencing of the defendant," and the Court is not required to grant a reduction simply because of a subsequent amendment to the guidelines. USSG §1B1.10(a)(3), p.s. If, upon consideration of the § 3553(a) factors, the Court had concluded that a sentence reduction was warranted, Cabrera is correct that the *Guidelines Manual* instructs the Court to use the amended guidelines range that would be ascertained, in part, through the application of §4C1.1. But having reached the opposite conclusion, no such step is required.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Claudio Cabrera, Jr.'s Motion for a Sentence Reduction [Record No. 462] is **DENIED**.

Dated: August 16, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky